UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     DMW MARINE, LLC, | : | |
|         Debtor. | : | Bky. No. 11-13953 ELF |
| | : | |
| MICHAEL H. KALINER, Trustee | : | |
| of the Estate of DMW Marine, LLC, | : | |
|         Plaintiff, | : | |
| v. | : | |
| DMW MARINE, LLC (DE), | : | Adv. No. 13-0292 |
| DMW MARINE GROUP, LLC, and | : | |
| DOUGLAS M. WEIDNER, | : | |
|         Defendants. | : | |

# O R D E R

**AND NOW WHEREAS,**

A. The Debtor DMW Marine, LLC ("the Debtor") filed a voluntary chapter 11 bankruptcy petition on **May 17, 2011**.

B. The case was converted to a chapter 7 on **May 31, 2011**.

C. Michael H. Kaliner was appointed the chapter 7 trustee ("the Trustee").

D. The Trustee commenced this adversary proceeding on **May 16, 2013** by filing a complaint ("the Complaint") against Defendants DMW Marine, LLC (DE), DMW Marine Group, LLC, and Douglas M. Weidner.[1]

---

[1] I will refer to the two (2) entities collectively as "the Marine Group" and all three (3) Defendants collectively as "the Defendants."

-1-

E.  The Complaint asserts six (6) claims for relief:

    (1) Count I:    Successor Liability under 28 U.S.C. §2201

    (2) Count II:    Actual Fraud under 11 U.S.C. §§548(a)(1)(A) and 544(b)(1); 12 Pa.C.S. §5104(a)

    (3) Count III:    Constructive Fraud under 11 U.S.C. §§548(a)(1)(B) and 544(b)(1); 12 Pa.C.S. §§5104(b) and 5105

    (4) Count IV:    Post-Petition Transfers under 11 U.S.C. §549

    (5) Count V:    Recovery of Transfers under 11 U.S.C. §550

    (6) Count VI:    Trademark and Copyright Infringement

F.  The Defendants filed a motion for summary judgment ("the Motion") and supporting brief on February 27, 2014 (Doc. #22), to which the Trustee filed a response on March 28, 2014 (Doc. #28).

G.  Summary judgment should be entered when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. E.g., Tri-M Group, LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011); In re Bath, 442 B.R. 377, 386-87 (Bankr. E.D. Pa. 2010).[2]

    \*    \*    \*    \*

---

[2]    More specifically, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. Id. at 248.

    As the moving parties without the burden of proof at trial, the Defendants may establish they are entitled to judgment either by demonstrating that the undisputed facts negate an element of the Trustee's claim or that the Trustee lacks evidence to support an essential element of his claim. In re Polichuk, 506 B.R. 405, 422 (Bankr. E.D. Pa. 2014) (citing Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996) and Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 868 F. Supp. 1278, 1287 n.5 (D. Utah 1994)).

      **AND**, upon consideration of the Motion and the response thereto, it is hereby

**ORDERED** that:

1. The Motion is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

2. As to **Count I** for Successor Liability, the Motion is **DENIED**.[1]

3. As to **Count II** for fraudulent transfers made with actual fraudulent intent pursuant to 11 U.S.C. §§548(a)(1)(A) and 544(b)(1), and 12 Pa.C.S.A. §5104(a), the Motion is **DENIED**.[2]

4. As to **Count III** for fraudulent transfers made with constructively fraudulent intent pursuant to 11 U.S.C. §§548(a)(1)(B) and 544(b)(1), and 12 Pa.C.S. §§5104(b) and 5105, the Motion is **DENIED**.[3]

5. As to **Count IV** for post-petition transfers pursuant to 11 U.S.C. §549, the Motion is **DENIED**.[4]

6. As to **Count V** for recovery of avoided transfers pursuant to 11 U.S.C. §550, the Motion is **DENIED**.[5]

7. As to **Count VI**:

    (a) on the Trustee's claim for Trademark Infringement, the Motion is **GRANTED**;[6]

    (b) on the Trustee's claim for Copyright Infringement, the Motion is **GRANTED**;[7]

    (c) **JUDGMENT** is entered on **Count VI** in favor of the Defendants and against the Trustee.

Date: <u>July 10, 2014</u>

                                      **ERIC L. FRANK**
                                      **CHIEF U.S. BANKRUPTCY JUDGE**

# **ENDNOTES**

1.  In **Count I** of the Complaint, the Trustee seeks declaratory relief pursuant to 28 U.S.C. §2201. Specifically, the Trustee requests that the court declare that the Defendants are liable for the debts of the Debtor based upon the doctrine of "successor liability." See generally In re Emoral, Inc., 740 F.3d 875, 882 (3d Cir. 2014) (a "cause of action for successor liability . . . belongs to the bankruptcy estate").

Under Pennsylvania law, the general rule is that "when one company sells or transfers all its assets to another, the successor company does **not** embrace the liabilities of the predecessor simply because it succeeded to the predecessor's assets." Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 308-09 (3d Cir. 1985) (emphasis added); accord Johnson v. American Standard, 8 A.3d 318, 322 n.1 (Pa. 2010). However, several exceptions to the general rule have developed. A successor entity **is liable** for the debts of the predecessor entity when:

  (1) the successor/transferee expressly or implicitly agreed to assume liability;

  (2) the transaction amounted to a consolidation or merger;

  (3) the successor/transferee is merely a continuation of the selling corporation;

  (4) the transaction was fraudulently entered into to escape liability; or

  (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.

See, e.g., American Standard, 8 A.3d at 322 n.1 (citing Continental Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 (Pa. 2005)).

In the Complaint, the Trustee alleged, inter alia, that:

  • Marine Group is engaged in the same business as the Debtor;

  • Marine Group is effectively controlled by Defendant Weidner;

- certain critical employees of the Debtor perform the same functions for Marine Group;

- Marine Group also uses the same phone number, web page and business address as the Debtor;

- Many of the customers of Marine Group are the same as the Debtor's customers.

(Complaint ¶¶23-30).

In the Motion, the Defendants contend that the Trustee has not come forward with sufficient evidence to establish the existence of any of the exceptions to the general rule against successor liability. Specifically, the Defendants argue there is no evidence to establish that there was a sale or transfer of assets from the Debtor to Marine Group, or that any transfer of the Debtor's intellectual property occurred, or that the Debtor compiled a customer or supplier list that could have been transferred or sold. The Defendants cite the deposition testimony of the Debtor's former employees, Sarah Reeder and Douglas M. Weidner, to establish that Marine Group does not share the same telephone or fax number, place of business, office equipment, email addresses, customers, suppliers, trade name, employees, owners/members, and web site as the Debtor. (See Defendants' Ex.'s E, F). Further, the Defendants argue there is no continuity of ownership; the Debtor was owned by Douglas Weidner and Jacob DuPont, and Marine Group is owned by William Weidner and Mark Gregory. (See Defendants' Ex. F at 51).

The Trustee counters with evidence that relates to several bases for imposing successor liability. The Trustee offers deposition testimony that Marine Group is engaged in the same business as the Debtor, commenced their operations shortly after the Debtor ceased operations, have a number of the same employees as the Debtor, did business with some of the Debtor's former customers and suppliers, and used the Debtor's web site and email addresses until July

2011.

Based on this record, I conclude the Trustee has marshaled just enough evidence to create an issue of material fact as to whether DMW Marine Group is the successor of the Debtor. This precludes the entry of summary judgment in the Defendants' favor.

2.    In **Count II** of the Complaint, the Trustee asserts a claim to avoid a transfer made with Actual Fraud under 11 U.S.C. §§548(a)(1)(A) and 544(b)(1). In connection with the §544(b)(1) claim the Trustee relies upon 12 Pa.C.S. §5104(a) as applicable state law.

11 U.S.C. §548(a)(1)(A) provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

Similarly, under §5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), the Trustee must prove that the Debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

Under PUFTA, a transfer is "Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. The term includes payment of money, release, lease and creation of a lien or other encumbrance." 12 Pa.C.S. §5101.

Because proof of actual fraudulent intent is rarely available, a plaintiff may allege certain badges of fraud. In re DBSI, Inc., 2011 Bankr. LEXIS 1677 (Bankr. D. Del. May 5, 2011) (listing badges of fraud for §548(a)(1)(A)); 12 Pa.C.S. §5104(b) (factors to be considered under

Pennsylvania law). "The existence of fraudulent intent may be inferred from all facts and circumstances surrounding the conveyance." Tiab Commc'ns Corp. v. Keymarket of Nepa, Inc., 263 F. Supp. 2d 925, 934 (M.D. Pa. 2003) (citing Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 213 (3d Cir. 1990)).

In asserting that an intentional fraudulent transfer occurred, the Trustee points to much the same evidence invoked in connection with the successor liability claim: the Debtor and Marine Group's use of the same: facility and address; office equipment; audio/visual equipment; telephones; web site; computer maintenance personnel; email addresses; customer/contact lists; trade name; and logo. These are the assets that are alleged to have been transferred fraudulently. (Complaint ¶¶52-53). In his brief, the Trustee claims that "[b]usiness was diverted away from the Debtor and to the new company. . . . The cranes sold to The Great Lakes, Gulf Coast, and Sprague would have been sold by the Debtor rather than DMW Marine Group LLC." (Trustee Response at 10). Furthermore, the Trustee argues that the "transfer of intellectual property such as trade name and Web domain name and usurpation of business opportunities harmed the other creditors of the Debtor entity." (Id.).

The Defendants' essential argument is that the record reflects that no "interest of the debtor in property" was transferred. They contend that the evidence rebuts the Trustee's allegation that certain assets (i.e., email addresses, phone numbers, fax numbers, office equipment, web addresses, and client or vendor lists) were transferred to Marine Group. (See Defendants' Ex. E, Reeder Deposition (Marine Group's web address, telephone and fax number are different than the Debtor's)).

The Defendants' argument exalts form over substance. Notwithstanding the absence of

any formal transfer agreement, and reviewing the evidence in the light most favorable to the Trustee (the non-moving party), I conclude that there is sufficient evidence in the summary judgment record to support a factual finding that Marine Group may have appropriated the Debtor's customer list and intellectual property (such as its web site, trade name or domain name). Given that a transfer under PUFTA may be voluntary or involuntary, the Trustee has raised an issue of material fact by establishing that Marine Group was in possession of, or at least utilizing, the Debtor's property. Further, there are physical assets that were in the possession of the Debtor that are now in the possession of, or are being used by DMW Marine Group, such as Sarah Reeder's computer. (Trustee Ex. A, Reeder Deposition at 27-30 (Reeder returned the Debtor's computer to Douglas Weidner and received it back for use while working for DMW Marine Group)).

Finally, while the Defendants also argue that there is no evidence in the record of an intent to defraud, (and again, reviewing the evidence in the light most favorable to the Trustee), there is sufficient evidence regarding certain badges of fraud that ultimately could support a finding of an intent to hinder, delay or defraud:

- the transfers were made to permit Weidner to remain in control of the former assets of the Debtor;

- the transfers were not for reasonably equivalent value;

- the transfers were concealed;

- the transfers occurred when the Debtor was insolvent or became insolvent because of the transfers (see Trustee Ex. F, Expert Report on Insolvency of the Debtor);

- the transfers consisted of all of the Debtor's assets.

In short, the existence of a material issue of fact preclude the entry of summary judgment on Count II.

3.      Under 11 U.S.C. §548(a)(1)(B), the trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    i.  received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    ii.  (I)  was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III)  intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV)  made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The constructive fraud provision of PUFTA, 12 Pa.C.S. §5104(a)(2) (again applicable through 11 U.S.C. §544(b)), provides that a debtor's transfer is fraudulent as to present and future creditors if the debtor made the transfer: without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

        (i)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

      (ii)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

PUFTA's other constructive fraud provision, 12 Pa.C.S. §5105, states that a transfer is fraudulent as to present creditors only, if "the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ."

The alleged transfers at issue under the constructive fraud provisions are the same as those alleged under the actual fraud provisions. My analysis is similar to the above discussion regarding actual fraud. The Trustee has presented evidence that Marine Group is in possession of assets of the Debtor with no corresponding consideration having been given to the Debtor. Thus, there is a question of material fact whether the transfers occurred, whether value was given, and whether the alleged transfers occurred pre or post-petition.

4.    11 U.S.C. §549 provides: "Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court."

Again, the Defendants argue that no transfers occurred as demonstrated by the evidence. The Debtor did not transfer its phone number, fax number, email address, business location, website, customer list, or vendor list to the Defendants. No furniture was identified as having been transferred. (Defendants' Brief at 17-18).

The Trustee points to the screen shots of the web site showing the same domain name, same email addresses, the same address and telephone number during the period of June through July 2011. (Trustee Response at 13, Ex.'s B-D). The Trustee has also come forward with evidence that office equipment was transferred from the Debtor to Marine Group. I find that this is sufficient to raise a material issue of fact to be determined at trial.

5.      The Trustee's 11 U.S.C. §550 claim survives because the Defendants' Motion with respect to the avoidance claims in Counts II, III, and IV, that have been denied.

6.      In the Complaint, the Trustee alleged that the Defendants "misappropriated the trade name DMW, website, [and] logo . . . and [t]he infringement . . . was willful and carried out at the express direction of Defendant Weidner with the purpose of misleading Debtor's customers into thinking that they were continuing to conduct business with the Debtor." (Compl. ¶¶81, 87).

The Trustee has not alleged whether his trademark infringement claim is based on federal or state law. The Lanham Act, 15 U.S.C. §1051 et seq., governs a federal claim, and the Pennsylvania Trademark Act, 54 Pa.C.S. §1101 et seq., covers any state law claim. However, a trademark infringement claim or unfair competition claim under federal or state law, including Pennsylvania common law, have the same essential elements. Componentone, L.L.C. v. Componentart, Inc., 2008 WL 4790661, at *5 (W.D. Pa. Oct. 27, 2008); First American Marketing Corp. v. Canella, 2004 WL 250537, at *2 (E.D. Pa. Jan. 26, 2004) (citing Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003)).

To prevail for trademark infringement under §§32(1) and 43(a) of the Lanham Act, the

plaintiff must demonstrate three (3) elements: (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) use of the mark by defendant is likely to cause confusion. Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir. 2000); Tillery v. Leonard & Sciolla, LLP, 521 F. Supp. 2d 346, 349 (E.D. Pa. 2007) (citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)).

Establishing the first element – that the mark is valid and legally protectable – will depend upon whether the mark is federally registered:

> If the mark at issue was federally registered and had become "incontestable," pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved. Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.

Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991) (citations omitted).

Not every word, name, or symbol qualifies as a protectable trademark. McCarthy on Trademarks §3:3 (4th ed. 2014) ("McCarthy"). A trademark is "any word, name, symbol, or device or any combination thereof . . . used . . . to identify and distinguish [one's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. §1127. To qualify as a trademark, the mark "must be used in a manner calculated to project to purchasers or potential purchasers a single source or origin for the goods. Mere intent that a term or phrase function as a trademark is not enough in and of itself." In re Volvo Cars of North America, Inc., 46 U.S.P.Q.2d 1455, 1998 WL 239298, at *5 (T.T.A.B. 1998) (citation omitted). "The critical enquiry in determining whether a designation functions as a mark is how the designation would be perceived by the

relevant public." McCarthy §3:3 (citing In re Eagle Crest, Inc., 96 U.S.P.Q.2d 1227, 1229, 2010 WL 3441109 (T.T.A.B. 2010)).

"In determining what can qualify as a trademark, it is crucial that the symbol in question be so distinctive that it is capable of performing the function of identifying and distinguishing the goods that bear the symbol." McCarthy §3:1.

> Trademark law recognizes four separate categories of marks, based on their levels of inherent distinctiveness. From most distinctive to least distinctive, these categories are: (1) arbitrary terms; (2) suggestive terms; (3) descriptive terms; and (4) generic terms. "Although these categories are often separated by only the finest of lines, the distinctions are crucial." Dranoff-Perlstein Assoc. v. Sklar, 967 F.2d 852, 855 (3d Cir. 1992). If the court holds a term is arbitrary or suggestive, it is deemed inherently distinctive and thus automatically valid and legally protectable. Id. On the other hand, if the court holds that a term is merely descriptive, and thus not inherently distinctive, then its validity depends upon proof of secondary meaning. Id. Finally, if a term is held to be generic, it can never qualify for trademark protection. Id.

Mateson Chem. Corp. v. Vernon, 2000 WL 796737, at *4 (E.D. Pa. May 9, 2000).

A secondary meaning exists when a trademark "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." Commerce Nat'l Ins. Servs., 214 F.3d at 438 (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978)). Factors considered in determining whether a mark has developed secondary meaning include: (1) extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) fact of copying; (5) customer surveys; (6) customer testimony; (7) use of mark in trade journals; (8) size of company; (9) number of sales; (10) number of customers; and (11) actual confusion. Tillery, 521 F. Supp. 2d at 349 (citing Commerce Nat'l Ins. Servs., 214 F.3d 432).

To establish ownership of an unregistered mark, the plaintiff must demonstrate that it was

the first party to adopt the mark and that it was continuously used in commerce. Commerce Nat'l Ins. Servs., 214 F.3d at 438 (citing Ford Motor Co., 930 F.2d at 292).

Lastly, the plaintiff has the burden of demonstrating that the defendant's use of the mark is likely to create confusion. Likelihood of confusion exists "when the consumers viewing the defendant's mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Id. at 438-39 (quoting Scott Paper Co., 589 F.2d at 1229).

The Defendants' basis for summary judgment is that the Trustee has produced no evidence to support a trademark infringement claim. I agree.

The Trustee submitted screen shots of the Debtor's web site at various points in time during June and July 2011, which the Trustee argues establish that DMW Marine Group is or was using the Debtor's trade name, web site and domain name. (Trustee Response at 14 ("Defendant is clearly capitalizing on the prior trade name and experience of the Debtor.")). The Trustee submitted no other evidence on this issue.

The screen shots themselves do little to advance the trademark infringement claim. At most, the screen shots show that the Debtor may have been using "DMW Marine" as a trademark. See In re Eagle Crest, Inc., 96 U.S.P.Q.2d at 1229) (considering screen shots of web site as evidence of use).

The Trustee has offered no evidence that the purchasers or potential purchasers recognized the phrase "DMW Marine" as a trademark, that Marine Group used the phrase as its trademark, that the Debtor registered the mark with the Patent and Trademark Office, that the mark is inherently distinctive, that the mark has acquired a secondary meaning, or that Marine

-14-

Group's use of the mark was likely to create confusion.

Presumably, if the Debtor had registered the mark, the Trustee would have presented such evidence. Without such evidence, I infer that the mark was unregistered. As an unregistered mark, the Trustee had the burden of establishing a trademark which was inherently distinctive or had acquired a secondary meaning. The Trustee has failed to sustain its burden. Summary judgment will be entered in favor of the Defendants on the Trustee's trademark infringement claim.

7. To prevail on a copyright infringement claim, the plaintiff must establish: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Dam Things from Denmark v. Russ Berrie & Co. Inc., 290 F.3d 548, 561 (3d Cir. 2002); Gianacopoulous v. Glen Oak Country Club, 2007 U.S. Dist. LEXIS 7710, at *8 (M.D. Pa. Feb. 2, 2007) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

The first element, "ownership of a valid copyright," is further subdivided into five (5) requirements, three (3) of which appear to be applicable in this proceeding:  (1) originality, (2) copyrightability, and (3) compliance with statutory formalities. Custom Dynamics, LLC v. Radiantz LED Lighting, Inc., 535 F. Supp. 2d 542, 551 (E.D.N.C. 2008) (citing Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright §13.01[A] (LexisNexis 2007)).

To bring suit under the Copyright Act of 1976, a plaintiff must register its copyright prior to filing. Custom Dynamics, 535 F. Supp. 2d at 551 (citing 17 U.S.C. §411(a) ("[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.")).

Generally, a certificate of registration issued by the U.S. Copyright Office will constitute prima facie evidence of the validity and ownership of a copyright. Ford Motor Co., 930 F.2d at 290-91.

Defendants' basis for summary judgment is that the Trustee has produced no evidence to support a copyright infringement claim. In response to the Motion, the Trustee has not submitted a certificate of registration or offered any evidence that the Debtor registered materials to be copyrighted. Rather, the Trustee submitted only the screen shots of the Debtor's web site showing a copyright notice for 2004 to 2011. (See Trustee Ex.'s B-D). While probative whether the Debtor claimed a copyright in the material, the notice does not demonstrate that the statutory requirements for registration have been satisfied. Nor does it raise a material issue of fact on the copyright infringement claim. Without any probative evidence on registration, the Defendants are entitled to summary judgment.